# N. Y. SUPREME COURT.

## In the Matter of the Estate of JESSE HOYT, deceased.

*Code of Civil Procedure, section 2618 — Practice as to probate of a paper propounded as a will — Witnesses to be examined — Proof required, and manner of obtaining it.*

The proponents of a paper which is claimed to be this decedent's will lately finished the presentation of their proofs. The contestant, through her counsel, thereupon filed an affidavit alleging facts which tend to show that the testimony of certain persons in such affidavit named "may be material" to the issues of this proceeding. The contestant also caused to be filed and to be served upon the proponents a notice to the effect that, before proceeding to introduce proofs in opposition to probate, she required the examination of the persons in such affidavit named :

*Held, first,* that the duty of producing such witnesses falls upon parties proponent, not because the statute so declares, but because, as it fails to impose that duty upon parties contestant, they can rest securely upon the fact that, until such witnesses have been produced and examined, the will cannot be admitted to probate.

*Second.* The course of the examination of witnesses brought into court by proponents at the instance of contestants, is a matter purely in the discretion of the surrogate. Such witnesses must be examined, because the law demands their examination, whenever the proper notice has been filed and the surrogate has found them to be material. They are not to be charged, so to speak, to the account of either party. They are to be examined by the surrogate. The surrogate can require counsel to assist him in the examination. Neither party can demand, as of right, the opportunity of first examining the witness who has been produced in pursuance of the notice, and neither party can demand, as of right, that his opponent shall begin such examination. The surrogate should see to it that both parties are afforded a fair opportunity for full and searching investigations. In most instances, where witnesses shall be thus brought into court at the request of contestants, it will be the most natural course to call upon the contestants themselves to pursue the inquiry in the first instance, because, presumably, they will be better advised than their adversaries as to the precise matters which they wish and expect to prove ; but in such cases a direction to the contestants to begin the inquiry, will not of itself involve any limitation upon their right of making that inquiry as searching and thorough as they would have been permitted to make it if the witness

had been voluntarily produced by the opposite party and had testified in its behalf.

*Third.* As to when witnesses produced in accordance with section 2618 of the Code of Civil Procedure are to be examined, it is a mere question of the order of proof, and is entirely within the discretion of the surrogate. In the exercise of such discretion he would ordinarily permit the party applying for the examination to decide for himself when that examination should be had.

*May*, 1884.

ROLLINS, *J.* — Section 2618 of the Code of Civil Procedure contains the following provisions as to proceedings in surrogates' courts for the probate of a paper propounded as a will :

" The surrogate must cause the witnesses to be examined before him. The proofs must be reduced to writing. Before a written will is admitted to probate, two, at least, of the subscribing witnesses must be produced and examined, if so many are within the state, and competent and able to testify. * * * * Any party who contests the probate of the will may, by a notice filed with the surrogate at any time before the proofs are closed, require the examination of all the subscribing witnesses to a written will, or of any other witness whose testimony the surrogate is satisfied may be material ; in which case all such witnesses who are within the state, and competent and able to testify, must be so examined."

What is the meaning of the words above quoted, and how, if at all, have they changed the course of procedure which obtained in probate controversies before the enactment of the Code ?

These questions arise upon the following state of facts : The proponents of a paper which is claimed to be this decedent's will, lately finished the presentation of their proofs. The contestant, through her counsel, thereupon filed an affidavit, alleging facts which tend to show that the testimony of certain persons in such affidavit named "may be material" to the issues of this proceeding. The, materiality of this testi-

mony does not seem to be disputed.  The contestant also caused to be filed and to be served upon the proponents a notice to the effect that before proceeding to introduce proofs in opposition to probate, she required the examination of the persons in such affidavit named.   None of those persons were produced for examination on the day specified in the notice.

Upon these facts I am now asked to determine :

*First.*  Are the proponents bound under the provisions of section 2618, above quoted, to produce before the surrogate the persons named in the notice ?

*Second.*  When those persons shall be produced, what will be the respective rights and privileges of the parties hereto in reference to their examination ?

*Third.*  In case it shall be decided that the proponents are responsible for their production, shall the contestants be conceded as of course the right to an immediate examination, or is it discretionary with the surrogate when such examination shall be had ?

Upon these questions the views of opposing counsel are utterly at odds.   On the one hand it is claimed that section 2618 has made a radical change in the procedure of surrogates' courts, and has very substantially enlarged the powers and privileges of contestants.   It is insisted, on the other hand, that the section in dispute has effected no essential modification in the law as it existed before the enactment of the Code.   It is manifest that the particular facts and circumstances of this case are of no importance to the present inquiry, and I shall, therefore, refrain from commenting upon them.   The matters now to be decided are purely matters of general practice and procedure, whose determination in the case at bar will be applicable to all other cases of disputed probate.

I understand contestants' counsel practically to claim that parties opposing the probate of a will are no longer required, unless they choose so to do, to produce witnesses in their own behalf and submit them to the cross-examination of their

adversaries, but that, on the contrary, they can require their adversaries to produce and examine in chief every person who can give evidence material to the issue, and that at the conclusion of such examination they themselves can exercise all the privileges of cross-examination, with such right of impeachment, contradiction, &c., as that privilege ordinarily carries with it.

In opposition to this view it is insisted on behalf of the proponents that section 2618 does not in terms require at their hands either the production for examination or the examination of any of the witnesses included in the contestants' note. They contend that the sole purpose which that section aims to accomplish is to secure to contestants the absolute power of preventing the admission of a will to probate until they have first been afforded an opportunity of taking the testimony of every witness whom the surrogate shall decide to be material. Either of these constructions is plausible enough, and both of them have been supported by ingenuous and elaborate arguments.

As the language of the section is fairly susceptible of such widely different interpretations it is well to inquire what statutory provisions *in pari materia* were in force at the time of its enactment. An examination of this question discloses the fact that all those portions of the Code which relate to the mode of proving a will are founded in the main upon the provisions of two statutes which were operative for forty years after their enactment, and which were but recently abrogated by the general repealing act which took effect simultaneously with the taking effect of the Code itself. One of those statutes is chapter 460 of the Laws of 1837, the other is chapter 129 of the Laws of 1841. The former act provided in its tenth section that in a proceeding for the probate of a will the surrogate should " cause the witnesses to be examined before him. All such proofs and examinations," it said, " shall be reduced to writing. Two at least of the witnesses to such will, if so many are living in this state and are of sound mind

and are not disabled from age, sickness or infirmity from attending, shall be produced and examined."

Section 11 provided as follows: "In case the proof of any such will is contested, and any person having the right to contest the same shall, before probate made, file with the surrogate a *request in writing* that all the witnesses to such will shall be examined, then all the witnesses to such will who are living in this state and of sound mind, and who are not disabled * * * from attending, shall be produced and examined."

Section 17 declared that no will should be deemed proved until the witness to the same residing within this state at time of such proof, of sound mind, &c., should have been examined pursuant to law.

By chapter 129 of the Laws of 1841 the scope of section 11 of the act of 1837 was greatly enlarged. It was made to apply to all witnesses whom any person interested in the proof of the will should "*request to be examined*," and that, too, whether such witnesses were or were not subscribing witnesses to such will, provided only that the surrogate should first be satisfied that they could give material testimony. It will be observed that the "request" above referred to could be made by any parties to the proceeding, by proponents as well as by contestants. This word "request," as used in the acts of 1837 and 1841, has, it seems to me, substantially the same meaning as the word "require," in section 2618 of the existing law. The change of phraseology has not made, and could not have been intended to make, any change in the signification. Now, while the statute of 1841 was in force, what would have been the effect of a "request" made, in pursuance of its provisions, by any party interested in the proceeding? Would it have imposed upon the opposite party the duty of producing and examining the witnesses, whose examination was so "requested," and would it have given the party so "requesting" rights of cross-examination, impeachment, contradiction, &c., superior to those which his antagonist

could have exercised? Such an interpretation of section 11 would have practically made possible at every trial this extraordinary state of affairs, that proponents could have been compelled to produce and examine as their own witnesses all persons whose testimony was wanted by the contestants, and that contestants could have been similarly compelled to produce and examine as. *their* witnesses all persons whose testimony the proponents desired.

It can scarcely be contended that the legislature ever meant to bring about such a complete inversion of the customary and orderly procedure of a judicial investigation. The purpose and the meaning of the statutes of 1837 and 1841, so far as their provisions relate to the subject in hand, are not hard to understand. Those statutes contemplated, as the present Code contemplates, that a proceeding for probate is often conducted by the surrogate, without the intervention of counsel, either for or against the will, and without the formulating of any distinct and definite issues. They prescribed, therefore, that a certain specified amount and kind of evidence should be the absolute prerequisite of the admission of a will to probate, and that, too, even though no person interested appeared in opposition; and they provided simple and efficacious means by which a contestant might insist upon the production of certain other evidence, and might prevent the entry of a decree establishing the will until that evidence had been introduced.

I think that the substitution of the Code provisions for those contained in the acts of 1837 and 1841 has not served to enlarge in any respect the rights which contestants formerly enjoyed. My construction of section 2618 is this: by filing such a notice as is therein mentioned, and by satisfying the surrogate of the materiality of the witnesses whom such notice specifies, contestants can effectually block the probate of a disputed will until such witnesses (if competent, within the state, &c.) have been examined. If after filing such a notice contestants should cease to take any active part in the proceeding it would, nevertheless, be the duty of the surrogate

to take heed that no decree should be entered admitting the will until the witnesses named in the notice had been first examined.

For this reason I hold that the duty of producing such witnesses falls upon parties proponent, not because the statute so declares, for it does not, but because, as it fails to impose that duty upon parties contestant, they can rest securely upon the fact that until such witnesses *have* been produced and examined the will cannot be admitted to probate.

*Second.* Then comes the question, by which party should the witnesses produced according to notice be first examined? In answering this inquiry it is important to consider a fact which has been the subject of comment by the counsel on both sides of this controversy. I refer to a peculiarity of probate proceedings which distinguishes them from almost all other judicial investigations. When once an instrument purporting to be a will has been produced before the surrogate, and parties in interest have been summoned to attend its probate, it is no longer under the control of the persons who have propounded it. They cannot claim the right to withdraw it from the files, even though all persons interested consent to that course. Nor, on the other hand can they by obtaining the consent of all such persons, procure its admission to probate.

The proceeding is, in effect, a proceeding *in rem.* The surrogate must enter a decree pronouncing for or against the will. The parties may, of course, be active or passive, and may favor or oppose probate according to their interests or inclinations. But, whatever course they may pursue, it is the surrogate's duty (*sec.* 2622 *Code*) "to inquire particularly into all the facts and circumstances," and not until he himself is "satisfied of the genuineness of the will and the validity of its execution" can he admit it to probate (*Ibid*).

These considerations lead me to the conclusion that the course of the examination of witnesses brought into court by proponents at the instance of contestants is a matter purely in the discretion of the surrogate. Such witnesses must be

examined because the law demands their examination, whenever the proper notice has been filed and the surrogate has found them to be material. They are not to be charged, so to speak, to the account of either party. *They are to be examined by the surrogate.* In cases where the proceeding before the surrogate has assumed, as it has here assumed, the form of a trial, in which the parties are represented by counsel, the surrogate can doubtless require such counsel to assist him in the examination.

But it seems to me that neither party can demand, as of right, the opportunity of first examining the witness who has been produced in pursuance of the notice, and that neither party can demand, as of right, that his opponent shall be required to begin such examination. The surrogate should see to it that *both* parties are afforded a fair opportunity for full and searching investigation. In many instances — perhaps most instances — where witnesses shall be thus brought into court at the request of contestants, it will be the most natural course to call upon the contestants themselves to pursue the inquiry in the first instance, because, presumably, they will be better advised than their adversaries as to the precise matters which they wish and expect to prove; but in such cases a direction to the contestants to begin the inquiry will not of itself involve any limitation upon their right of making that inquiry as searching and thorough as they would have been permitted to make it, if the witness had been voluntarily produced by the opposite party, and had testified in its behalf.

How far, if at all, the conduct of the examination of such witnesses may properly be regulated by a consideration of their friendliness or unfriendliness to the one party or the other, or by other circumstances apparent when they are upon the stand, is a matter which will be determined when the occasion for its determination arises.

*Third.* There only remains to be considered the question when it is that witnesses produced in accordance with section

2618 are to be examined. I hold that this is a mere question of the order of proof and that it is entirely within the discretion of the surrogate. In the exercise of such discretion he would ordinarily permit the party applying for the examination to decide for himself when that examination should be had. In the present case I can see no reason why the testimony of the persons named in the notice should not be taken at once, if the contestant so desires. As those persons are severally called to the stand the court will give whatever special direction as to their examination the circumstances shall seem to warrant.